## CLAUDE NEON ELECTRICAL PRODUCTS, Inc., v. ECKSTEIN et al.

District Court, W. D. Washington, S. D.
March 12, 1929.

### No. 364.

G. Wright Arnold, of Seattle, Wash., and Lyon & Lyon, of Los Angeles, Cal., William Bohleber, of New York City, and Reginald E. Caughey, of Los Angeles, Cal., for plaintiff.

Caldwell & Lycette and Weldon G. Bettens, all of Seattle, Wash., for defendants.

CUSHMAN, District Judge. The evidence offered upon the motion for a preliminary injunction consists of affidavits and an exhibit—one of the signs which plaintiff contends infringes the patent in suit.

Claim 1 of the patent reads: "1. A luminescent tube containing previously purified neon and provided with internal elec-

trodes for illuminating said gas, said electrodes being deprived of occluded gases and having an area exceeding 1.5 square decimeters per ampere, to decrease the vaporization of the electrodes and prevent the consequent formation upon the walls of the tube, in proximity to said electrodes, of deposits containing said gas, whereby the luminosity of the tube is maintained constant for a very considerable period of time without a fresh introduction of gas."

Application for patent was filed in 1911. Claims were rejected in 1912. Amendments were made in the same year. The claims as amended were again rejected in 1913, amended, and again rejected in the latter year. In December, 1914, the claims were amended by inserting the words "being deprived of occluded gases and" after the word "electrodes." So amended, the claims were allowed.

In the argument for the allowance of the patent after the last amendment, it was said by the patentee, in distinguishing the electrodes of his claims from the large electrodes of a prior French patent:

"Aside from, and in addition to the foregoing, we respectfully submit, the following:

"The French patent of record contains a statement that large electrodes are employed in a helium lamp, but absolutely fails to indicate the reasons for employing these electrodes. After analyzing the matter, it becomes apparent that the object sought was simply and solely to prevent heating of the electrodes, due to the decrease in the density of the current, and, in this way, to avoid the release of the occluded gas in the electrodes, which release would seriously check the luminescence of a helium tube. It is with an entirely different viewpoint that M. Claude has sought to utilize large electrodes in his neon tube. In fact there can be no question in his case of avoiding the release of occluded gases, for the reason that an essential preliminary step in the manufacture of the Claude tube, which, as described at length in the specification, consists expressly in subjecting the electrodes to the action of intense currents capable of heating them strongly in spite of their large surface, and of causing occluded gases to escape. Consequently, in the Claude tube the occluded gases play no part whatever. The reason for the employment of large electrodes in the Claude tube is, therefore, entirely different; it is due to the necessity of reducing the vaporization of the electrodes occasioned by the passage of the current, a vaporization which, according to M. Claude's own tests, has the effect of producing a rapid absorption of the neon itself.

"It follows, then, that the large electrodes of M. Claude's neon tube, instead of serving, as in the helium tube or lamp, to prevent the rapid destruction of the lamp by the alteration of the gaseous atmosphere therein, are used for the purpose of prolonging the effective life of the lamp without requiring any fresh charge of neon. Moreover, it is again insisted that there is a great difference between neon and helium from the standpoint of their action with respect to the electrodes, a difference which M. Claude has most elaborately explained. Finally, it is urged that the citations are completely avoided by the amendment supra to the claims, since it is now stated that the large electrodes of the Claude lamp have a special property or condition—i. e. deprived of occluded gases."

The foregoing shows that because of this feature, i. e., the element of the comparatively large electrodes being deprived of occluded gases, the combination disclosed was considered patentable.

Neither the question of the validity of the patent nor that of infringement, other questions aside, can be satisfactorily determined without a full understanding of what is meant by the foregoing. Such understanding the court is unable to get from the showing which has been made.

The motion for a preliminary injunction is denied.